**NOT RECOMMENDED FOR PUBLICATION**
File Name: 05a0187n.06
Filed: March 15, 2005

**No. 03-4431**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| LARRY HROMETZ, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LOCAL 550 INTERNATIONAL ASSOCIATION | ) | |
| OF BRIDGE, CONSTRUCTION AND | ) | |
| ORNAMENTAL IRON WORKERS, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| Defendant-Appellee, | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| INTERNATIONAL ASSOCIATION OF BRIDGE, | ) | OHIO |
| STRUCTURAL AND ORNAMENTAL IRON | ) | |
| WORKERS INTERNATIONAL OFFICE, | ) | |
| | ) | |
| Defendant-Appellee, | ) | |
| | ) | |
| WILLIAM V. SHERER, | ) | |
| | ) | |
| Defendant-Appellee, | ) | |
| | ) | |
| RUSSELL NEFF, | ) | |
| | ) | |
| Defendant-Appellee. | | |

Before: SILER, COLE, and CLAY, Circuit Judges.

**SILER, Circuit Judge.** Plaintiff Larry Hrometz sued Local 550 International Association

of Bridge, Construction and Ornamental Iron Workers, two local officers, William Sherer and

Russell Neff (collectively, the local union and its officers are "Local 550"), and the International

Association of Bridge, Construction and Ornamental Iron Workers International Office

("International"), for expelling him from the union prior to his exhaustion of internal remedies.

Following summary judgment in favor of the defendants, the Sixth Circuit remanded, *Hrometz v. Local 550, Int'l Ass'n of Bridge Constr. & Ornamental Ironworkers*, 227 F.3d 597 (6th Cir. 2000) ("*Hrometz I*"), instructing the district court to order Hrometz reinstated; to enjoin the enforcement of certain union disciplinary procedures; and to determine damages, if any, for the duration of the expulsion. Upon remand, the district court granted summary judgment to the defendants on damages, but awarded Hrometz attorney's fees and costs for the proportion attributable to the injunction. It also sanctioned Hrometz's attorney for conduct during discovery. Hrometz appeals, seeking damages, the full amount of attorney's fees and costs, and to vacate the sanctions. We AFFIRM in part and REMAND in part.

## BACKGROUND

*Hrometz I* contains a comprehensive review of this case's background. Accordingly, only the proceedings and facts necessary to this appeal are outlined below.

After remand, the International certified a complaint to the court that Hrometz's counsel had violated Local Rule 30.1(b)(6) during Hrometz's April 2001 deposition when the International asked Hrometz a series of questions relating to his claim for emotional damages. At one point, Hrometz was asked whether he had lost sleep since the beginning of 1997. As Hrometz was answering the question, the court reporter signaled that a break was necessary so that she could obtain more paper. Before she alerted the parties, but after she had stopped recording the testimony, Hrometz answered:

"That's a difficult question to answer."[1]  It is undisputed that Hrometz and his counsel conferred during the break.  When the parties returned, the International repeated the earlier question.  This time, Hrometz responded: "Yes, in regards that this lawsuit has been the single largest concern of the main event in my life at this point . . . . The finances were draining, and I worried.  I worked hard . . . I was a tired person, but I did worry about the way it was unfolding."  The International then asked: "When you were outside talking with your counsel, were you talking at all about the testimony that you were going to be giving in here?"  Hrometz's counsel instructed him not to answer the question on the grounds of attorney-client privilege.[2]

On May 9, 2001, the International sent a letter to Hrometz's counsel asserting that he had improperly instructed Hrometz not to answer a deposition question.  Specifically, the letter stated: "The International Union believes your instruction to Mr. Hrometz was inappropriate and that the Local Rules and case law require Mr. Hrometz to answer the question posed."  The reply letter did not respond to the International's claim, and instead simply stated: "I'm not going to provide confidential explanation of activity."  Consequently, the International certified the discovery dispute to the district court.  In the certification letter, the International reiterated its position that the

---

[1] Following the break, the International asked Hrometz on the record to confirm that prior to the break he had asked Hrometz whether Hrometz had lost sleep for any significant time since the beginning of 1997.  Hrometz confirmed this.  International then asked whether Hrometz's answer had been "that's a difficult question to answer."  Hrometz responded: "That's close.  I was responding that — ."

[2] Local Rule 30.1(b)(6) prevents counsel from conferring with a client when a question is pending.  Local Rule 30.1(b)(5) allowed "examining counsel [to] make appropriate inquiry about the basis for asserting the privilege" when it was asserted.  Local Rules 30.1(b)(5) and (b)(6) have since been modified, and (b)(5) is no longer included in the Local Rules.

question of whether Hrometz and his counsel had discussed the deposition testimony during the break did not implicate the attorney-client privilege. Additionally, the International sought to redepose Hrometz on the issue of whether he had discussed his testimony with his counsel during the break.

The magistrate judge resolved the dispute in favor of Hrometz's counsel. The magistrate judge, however, did not consider whether Hrometz's counsel had a proper basis for asserting the attorney-client privilege. Instead, he apparently concluded that because the International's question regarding loss of sleep was not fully on the record at the time the break began, Hrometz was permitted to confer with his counsel during the break. The district court reversed, holding that Hrometz's counsel violated a local rule by instructing Hrometz not to answer a question that did not implicate the attorney-client privilege.[3] The district court reasoned that an answer to the yes-or-no question would not have violated Hrometz's attorney-client privilege. Accordingly, it ordered Hrometz redeposed. The district court further held that sanctions against Hrometz's counsel under § 1927 were appropriate. Following Hrometz's second deposition, the court granted the International's motion for $4,949.25 in attorney's fees.

---

[3] At the time of the deposition in 2001, Local Rule 30.1(b) provided: "Counsel shall not instruct a witness not to answer a question except under the limited circumstances provided in FED. R. CIV. P. 30(d)(1). In the event privilege is claimed, examining counsel may make appropriate inquiry about the basis for asserting the privilege." Rule 30(d)(1) of the Federal Rules of Civil Procedure provides, in pertinent part: "A person may instruct a deponent not to answer only when necessary to preserve a privilege . . . ."

The district court later granted summary judgment to all the defendants on the issues of economic, emotional and punitive damages but granted Hrometz attorney's fees and costs attributable to the injunction only.

## STANDARD OF REVIEW

We review de novo the district court's grant of summary judgment. *Farhat v. Jopke*, 370 F.3d 580, 587 (6th Cir. 2004). "This court will not disturb a district court's determination regarding the award of attorney fees and costs unless it concludes that the lower court has abused its discretion." *Paschal v. Flagstar Bank*, 297 F.3d 431, 433-34 (6th Cir. 2002). Additionally, sanctions imposed under 28 U.S.C. § 1927 are reviewed for abuse of discretion. *Runfola & Assoc., Inc. v. Spectrum Reporting II, Inc*., 88 F.3d 368, 375 (6th Cir. 1996).

## DISCUSSION

### A. SUMMARY JUDGMENT ON THE ISSUE OF DAMAGES

Hrometz claimed compensatory and punitive damages under the Labor-Management Reporting and Disclosure Act ("LMDRA"), 29 U.S.C. §§ 411, 412.

### *1. Economic Damages*

In order to prove loss of rights and benefits, Hrometz must show both the availablity of the fringe benefits or a compensable loss. Applying *Rhodes v. Guiberson Oil Tools*, 82 F.3d 615, 623 (5th Cir. 1996), Hrometz has failed to establish "replacement expenses actually incurred in connection" with the expulsion and the benefits. Furthermore, he did not seek comparable services during his expulsion; therefore, he has suffered no replacement costs or damages.

Hrometz additionally claims that during his expulsion he worked 4,845 fewer hours than average members of comparable experience. However, a union hall hiring system is not a guarantee of employment, and each ironworker's employment status over a given period of time is unique. Also, a significant portion of the "missing" hours are attributable to Hrometz as, from his expulsion until September 1996, he did not return to the union hall to sign the "off work" list. In response, Hrometz claimed that he was unknowingly laid off at the instigation of Local 550.

Although he believes he would have been "called back" to work by a single employer for the entire period, there is no evidence showing that his March 1996 job was of any significant duration. There is likewise no evidence of prejudice against Hrometz in the referral of jobs from the list. Indeed, the district court found that after signing the referral list Hrometz was consistently referred for work. Accordingly, summary judgment on this issue was correct.

*2. Mental Distress*

"Generally, this circuit allows damages for emotional distress to be awarded upon a showing of intimidation, marital problems, weight loss, loss of sleep, shock, or humiliation." *Thompson v. Office and Prof'l Employees Intern. Union, AFL-CIO*, 74 F.3d 1492, 1508 (6th Cir. 1996) (internal quote omitted). A claim of emotional distress resulting from a LMRDA violation must be supported by physical manifestations – actual injury is a required element. *Petramale v. Local No. 17 of Laborers' Intern. Union of N. Am.*, 847 F.2d 1009, 1012 (2d Cir. 1988).

In *Petramale* the plaintiff's claims that he was "moody and argumentative; [that] he and his wife quarreled;" and that he was "nervous and unable to sleep at night" were sufficient to allow a jury verdict. *Id.* Hrometz offers similar proof here, claiming he became difficult to live with, and

that he suffered anxiety which resulted in insomnia and lost sleep. However, he has not visited a doctor for psychiatric treatment or for his sleep loss, and offers only his own testimony that he has suffered these ailments. Unlike the plaintiffs in *Thompson* and *Petramale*, Hrometz has not presented corroborating evidence. Therefore, Hrometz has not raised sufficient questions of fact to overcome the motion for summary judgment.

*3. Punitive damages*

Punitive damages are also allowed under the LMDRA "only upon a showing of a defendant's malice or reckless or wanton indifference to a plaintiff's rights." *Argentine v. United Steel Workers*, 287 F.3d 476, 483 (6th Cir. 2002). Hrometz alleged that he was subjected to harassment and intimidation from union members instigated by Local 550; however, he has not presented evidence that he was personally threatened by a particular member of the union, or that officers of Local 550 ordered or condoned such behavior.

He also asserted the right to continued union membership or expulsion only after proper process. Both unions complied with the disciplinary provision of the union constitution. Although the provision has since been enjoined from enforcement by this court, *see Hrometz I*, 227 F.3d at 603, the enforcement of that provision at the time of Hrometz's expulsion was not a malicious or wanton indifference to Hrometz's rights. Hrometz has not presented affirmative evidence to show that either union or the individual defendants acted with the requisite malice or recklessness to entitle him to punitive damages. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986).

**B. Amount of attorney's fees and costs awarded to Hrometz.**

The LMRDA allows awards of attorney's fees and costs under the "common benefit" theory. *Hall v. Cole*, 412 U.S. 1, 8 (1973). "The central issue for a court in determining the applicability of the common benefit theory is whether the members of the [union] shared in the benefit of the suit in the same way as [Hrometz]." *Argentine*, 287 F.3d at 489. The "common benefit" conferred here is the right to seek redress in the courts. The purpose of attorney fee awards under the LMDRA is "to spread the costs of litigation proportionately among [] beneficiaries." *Id.* No Sixth Circuit precedent *precludes* awarding attorney's fees attributable to a plaintiff's unsuccessful damages claims; however, there is also nothing appearing to *require* such an award. Indeed, this court has stated that the fee award burden should operate in proportion to the common benefits received. *See Shimman v. Int'l Union of Operating Eng'rs, Local 18*, 744 F.2d 1226, 1236 (6th Cir. 1984).

Here, the district court determined that the "need for and potential benefits derived from" the award of fees was best served when limited to fees attributable to the common benefit – the injunctive relief. The court determined that Hrometz's damage claims were too personal, and thus were ineligible for consideration of attorney's fees – a reasonable interpretation of the principle of common benefit. To compel the International and Local 550 to pay attorney's fees for Hrometz's damages claims would place an inequitable portion of the burden on the union members sharing in the "victory" on the injunction. The award of fees and costs related to the injunction is, however, equally shared among the beneficiaries as a whole. *See Argentine*, 287 F.3d 489. Therefore, the award of attorney's fees excluding the damage phase was not an abuse of discretion.

In computing attorney's fees, the magistrate judge performed a meticulous analysis of the submitted billing records, arguments, and comments of all parties. The calculations appear well

reasoned, and fairly balanced the concerns of the International and Local 550 and the requests of Hrometz. Thus, its adoption by the district court was not an abuse of discretion.

**C. Sanctions against Hrometz**.

Under 28 U.S.C. § 1927, "[a]ny attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Sanctions under this statute are appropriate where an attorney "falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party." *Holmes v. City of Massillon*, 78 F.3d 1041, 1049 (6th Cir. 1996). However, the final award of sanctions must be reasonably related to the misconduct. In this case, some sanctions were appropriate, but an award of nearly $5,000 was excessive.

At the time of the deposition, the International was permitted to inquire as to whether Hrometz had discussed his testimony with his attorney. The testimony went to the heart of Hrometz's claim for emotional damages, and if it had been influenced by Hrometz's consultation with his lawyer during the break, the International may have argued that the claim should be accorded less weight. Instead, the groundless assertion of privilege prevented Hrometz from answering the question.[4] Therefore, the International's decision to resolve the dispute in compliance with the local rules and, when that failed, to litigate, was reasonable.

---

[4] The International did not inquire as to the substance of any conversation counsel and Hrometz may have had. The district court correctly concluded that it did not implicate the attorney-client privilege. *See*, *e.g.*, *United States v. Goldfarb*, 328 F.2d 280, 282 (6th Cir. 1964) (discussing the essentials of the attorney-client privilege).

The question, then, is whether the court abused its discretion in approving the amount of sanctions requested by the International. In support of its application for fees under § 1927, the International included an affidavit attesting to the reasonableness of the hourly rates charged by its counsel. Additionally, the application included a bill of costs, with entries for each activity related to the discovery dispute, the amount of time spent on each activity, and the total amount owed. The application, therefore, is facially adequate. *See*, *e.g.*, *Building Serv. Local 47 Cleaning Con. v. Grandview*, 46 F.3d 1392, 1402-1403 (6th Cir. 1995). Nevertheless, the district court did not examine the fee request to determine whether the hours of work claimed were in fact reasonably necessary; the court instead granted the entire amount on the grounds that, but for the obstructionist conduct of Hrometz's counsel, "International was forced to research, prepare and file their discovery dispute, attend the hearing before the magistrate judge, appeal the magistrate judge's findings, re-depose Plaintiff, and prepare the motion and reply brief on the issue of sanctions." While this is true, it does not follow that all of the work performed during the discovery dispute was reasonably incurred because of the conduct of Hrometz's counsel. 28 U.S.C. §1927.

A review of the International's fee request reveals that certain of the tasks consumed an unreasonably high number of hours. Following the April deposition, the International spent roughly 7.5 hours researching the law, preparing the initial letter request, and preparing the certification letter. This was reasonable as it came at the beginning of the dispute. However, as the initial preparation work dealt with the same legal issue as the hearing before the magistrate judge, further research and preparation to the extent of 8 hours was unreasonable. It was equally unreasonable to

spend 9.3 additional hours preparing the appeal of the magistrate judge's decision; no new issues were raised at this stage, and the dispute still centered on the groundless assertion of privilege.

Of course, the International's time for travel to, and presence at, the hearing before the magistrate judge should be reimbursed fully. It is the extended preparation time which we question. However, we cannot determine from the International's fee request which hours were devoted to preparation and which to travel. Accordingly, we remand to the district court with instructions that it first determine which of the nearly 17.3 hours during June 19, 2001 to July 17, 2001, were devoted to travel and fully reimburse for those hours. Second, the court should award fees for no more than 6 hours of preparation work during that period, i.e., June 19, 2001 to July 17, 2001, including time for phone calls and correspondence. The fees sought by the International for the periods prior to but excluding June 19, 2001, and after but excluding July 17, 2001, are not duplicative and we cannot say they are unreasonable. We therefore affirm the award of the fees incurred during those periods. The district court should recalculate the award of fees and costs accordingly.

The grant of summary judgment to the defendants is AFFIRMED on the issues of compensatory and punitive damages and the award of attorney's fees and costs. However, the issue of sanctions against counsel for Hrometz is REMANDED for reconsideration of the amount consistent with this opinion.